Judge, I'd like to reserve two minutes for rebuttal, please. That's fine. Just state your name for the record and everything. Thank you. Oliver Lowy with the Federal Public Defender for the District of Oregon for Mr. Bean. Okay, go ahead. Good morning. May it please the court. By way of background, Mr. Bean has been forcibly medicated at least once a day for over two years. Refusing the medication will bring on multiple staff to him with antipsychotics. Can I just stop? Has he actually been forcefully medicated? He has been forcibly medicated in the following way, Your Honor. He has been, he has taken medication understanding, clearly understanding that if he refuses, he will be restrained and forcibly medicated. So for the past two years or however long it's been, 18 months or however long since the cell order, he has been taking the medication? Yes. Okay. And he remains. But he's still, he's still, they haven't, has there been a re-evaluation of him? There have been re-evaluations, that's correct. And the most recent evaluation was when? Within the last few months. I'm not sure of the exact date, Your Honor. And no change? Um, there, there has been no change that the evaluators have been able to discern with regard to competence. Okay. All right. Thank you. Okay. Go ahead. For two years on, he remains incompetent, suffering profound delusions. His continuing incompetence is consistent with the prosecution's failure to meet its cell burden, as we contend. The prosecution's witness, Dr. Pekanu testified, excuse me, Pekanu testified that the, quote, paucity, unquote, of relevant data precludes, quote, evidence-based recommendations for treatment. Instead, he opined that antipsychotics are, quote, worth a try. There is a yawning gap between worth a try and cell substantial likelihood requirement. Likewise, Pekanu testified that antipsychotics would place Dean at risk of developing. Mr. Lurie, can I just stop you there for just a moment? I got one side issue. Kathy, could you start the clock? There we go. And then a little, a question more directly to what we're discussing, and that is this. My understanding is that the district court didn't really get into the merits of the cell order, but rather determined that younger abstention should apply, and just said, younger applies? Exception doesn't work here? That's it. And that's the only issue that was younger issue? Yes, your honor. So your first hurdle is to convince us that the district court erred in its application of younger? Absolutely. Your honor, my- I know there's, I've read, you know, I did read the cell order and the, you know, some of the testimony that was offered by two competing doctors, and it's all very interesting, but there's a major legal hurdle here that you need to get over before we even get there. So it would help me if you would demonstrate to me or lay out why the district court erred in its younger ruling. Absolutely, your honor. I entirely agree with everything you just said. I want only to note that the state's established on our, it's our contention, the efficacy of anti-psychotics coupled with its forcing dean to daily risk the permanent physical disability and to daily endure involuntary insult to his bodily integrity is intolerable as a matter of due process. Turning now to the legal hurdle that you just mentioned, judge. The younger doctrine is inapplicable when the failure to in an irreparable injury. For full vindication of a right requires pre-trial intervention and state proceedings. The failure to review the merits of a petition to enjoin those proceedings may result in irreparable injury because if the refusal to intervene results in the right being violated, it can't later be fully remedied. Counsel, this is Judge Rawlinson. Counsel? Yes. What's your strongest case to support, uh, the argument that this type of case is the case, uh, type of case in which younger extension should not apply? A forced medication case. Do you have one of those? I do not have a forced medication case, your honor. However, as you, as you know, I have the double jeopardy case, Dominguez. I think that probably is the case closest on point, um, uh, to, uh, to the forced medication case. It's an analogy. I agree, but I think it's a very strong analogy. Um, and I would note that the cases that, um, the state relies on, uh, page 15 of their brief docket 18 of page 20. Um, in none of those cases, did the court consider an argument, a developed argument that, uh, forced medication constitutes an extraordinary circumstance to avoid the younger abstention? I have another procedural question that I wanted to ask you. Is this subject matter appropriately considered in behaviorist context, or should it be in a section 1983 action? Your honor. I think that this court is bound by its earlier Nettles panel opinion, um, uh, in which it held and which appellee concedes remains good law in footnote four in her brief after the en banc decision in Nettles. The panel Nettles opinion nevertheless remains good law. It was a consolidated case. And in that opinion, the panel noted and how the excuse me, the panel noted in the court's earlier holding in Bostic v. Carlson, um, remains good law. And that holding is quote, habeas jurisdiction is also available for prisoners claims that he has been subjected to greater restrictions of his liberty, such as disciplinary segregation without due process of law. The court went on in the Nettles case to hold that Mr Santos, because remember Nettles is a consolidated case, Mr Nettles and Mr Santos, that Mr Santos is, um, uh, that the success of his claim would result in his immediate release. And I'm now quoting from the shoe, the special housing unit to the general prison population. For that reason, his claim is properly brought as a petition for writ of habeas corpus. So what's the analogy to this case? Well, the analogy to this, there's no release or lessening of the term of imprisonment. Well, your honor, I think that there is release under as a matter of Oregon state law, because it requires that he be transferred to a community treatment program or be civilly committed. But even without even without that kind of release, the, um, the court Nettles notes a variety of other circuits, which have held very similarly to or had holdings very similar to that Nettles. And the one which they rely on most is from the Seventh Circuit. In the Graham case in the Seventh Circuit, they framed the issue as or characterized the issue of a quantum as a quantum change in custody. Not that the person is physically released necessarily, but as a Nettles, that the person is subjected to a quantum change in custody. So in Nettles, it's going from the shoe to the general population. Here, there's a quantum change because there is a quantum change in custody. When you are subject to forcible medication, as opposed to when you are not, our contention is if, if moving from a shoe to general population constitutes a quantum change constitutes a change in your liberty, which is after all, what habeas is about a change in your liberty, um, uh, where you are moved from a shoe to general population. Surely being injected with the anti-psychotics constitutes a change in your liberties, such that habeas properly lies. The district court didn't reach that issue. Is that correct? That's absolutely correct. Your honor, the district court relied exclusively on the younger abstention doctrine. And as I understand it, you agree that, that, uh, they, the, the, the state met that standard. You're just arguing the exception. Uh, and that really centers on the forcible medication, which, which I thought going into this was prospective, but you're saying he's actually been medicated. Yes. Yes, your honor. And, and of course he continues to be medicated. Our position is that that medication, uh, that being medicated forcibly, whether you, in fact, are strapped down or whether you're giving in simply because you know, if you don't constitutes, uh, yeah, it gets us around younger abstention. Okay. Why don't we hear from, um, from the state? Uh, good morning, may it please the court, Lee Salmon hearing on behalf of the superintendent. Um, I would like to clarify just one thing before I start, Judge Piaz, you asked if there had been any improvement in his condition. Um, my review of the state court criminal record is that there has been some improvement in his condition. Um, but obviously that's not fleshed out in the record. No, I understand. I was just wondering because it had been a while since the documents that we received didn't show recent, you know, what his status was recently. And I was just curious if there had been a determination that he was okay to stand trial that he had sufficiently. That determination is not yet. Right. So, so we're, so the cell order is in place. Correct. Um, apparently they have not had to use force, physical force to medicate him, but nonetheless, he's centrally compelled to take the medication or else they will. Right. That is my understanding of the status quo. Okay, fine. Right. Having said that, I would like to start with, uh, the younger issue, younger abstention. Um, the comedy lies at the core of younger, and that reflects the understanding that state courts are capable, fully capable of safeguarding a criminal defendant's constitutional rights. Because of that, this court has said that a federal court should almost never enjoin a state criminal proceeding in this court with perhaps one exception, that being the double jeopardy situation, this court has never done so. And so for example, in Gilbertson, uh, page in our follow all three cases, those involved pre-trial detention. And even though this court discussed it in the context of extraordinary circumstances, this court also noted, uh, particularly in page that federal court review quote, could not prejudice the conduct of the trial on the merits. Um, and that is precisely what petitioner is asking this court to do. It's effectively a de facto, uh, appeal from the state court decision in that strikes at the core of comedy in federalism. And that's something that this court could not do. And our position is that it cannot do. How could he ever vindicate his, this right at the conclusion of the trial? I do not know the answer to that question. That is petitioner. How could he, how could he vindicate that? Right. I have a hard time with your argument. Well, first off, I think we were talking about vindication. We're talking about federal court review and it's uncertain to me whether a petitioner couldn't file a petition for cert the United States Supreme court on the mandamus petition or the denial of mandamus petition. I don't know the answer to that, but it at least suggests that perhaps there was federal review and he did not avail himself of it. Um, I have also come across a few cases, a handful of cases where this issue was raised in a habeas corpus under 2254. I do not know if that would be successful. Um, but ultimately the point is that younger abstention here, uh, would intervene in the criminal proceeding. And at least according to petitioner, effectively bring it to a halt. And that's an extraordinary circumstance. And this court has repeatedly held in the U S Supreme court has repeatedly held that federal courts should almost never enjoin a criminal. Let me ask you this. What is the substantive federal constitutional right that he's seeking to My understanding is that it is, um, a due process claim, um, as established in cell, correct? Correct. Okay. So let's, let's assume for a moment that he could get, he's able to get over younger, is able to establish the habeas petition claim arises in but habeas, um, at that habeas proceeding, isn't the only, he's got to demonstrate that his constitutional right as defined by cell has been violated, right? The burden's on him, correct? Correct. Yes, your honor. So in, in habeas, you know, they have to make a really strong showing. Um, it is, it seems to me that he did in this context, habeas just provides one check because if the district court were to determine that there was a violation of his habeas rights in the cell proceeding, there'd be nothing to stop the state from correcting whatever error the district court determined and to do it over again. That is correct. Your honor. Is that right? That is correct. Um, in it, that, that potential redo, and I'm not saying that that would necessarily happen in this case, but that potential, that, that potential redo is necessarily going to be based on new facts. For example, in this case, we do have two, nearly two and a half years of treatment. And at least on this record, we don't know the results of that treatment. And so in that respect, it really does feel more like a de facto appeal of a state court ruling as opposed to habeas relief that would result in his release from confinement or would necessarily result in a release from confinement or a reduction in the quantum level of custody. Counsel, what's your position on whether or not this case was properly brought as a habeas petition? Our position is that it is not habeas. Um, this, uh, petitioner's claims should have been brought if at all under section 1983. And that goes back to Nettles. And I do disagree with counsel's Nettles 1. Nettles 1 did involve, and I refer to that as, um, the portion of Nettles involving petitioner Santos. Uh, Nettles 1 also held consistently with Nettles 2 that the, uh, success on the petition necessarily must lead to, um, release from custody or reduction in the quantum level of custody. And so if we look at the holding in Santos, what the court said is that if we remove, if there was success, uh, petitioner Santos would have immediately been moved from segregation into general population. The, the ruling, the core ruling that we're talking about here is that, uh, necessary component necessarily component in here relief on the petition. If the trial court, the, excuse me, the district court were to invalidate the cell petition that does not necessarily result in a, uh, reduction in the level of custody or release from custody. Uh, for that to happen, there would have to be circumstances or, uh, the trial court state trial court could determine that, um, petitioner remains incompetent. At which point the trial court would have to decide whether to discharge or to initiate civil commitment proceedings. I find it incredibly difficult to believe that the trial court would not initiate civil commitment proceedings, at which point we have an entirely new proceeding based on a different record, based on different standards to say that invalidation of the cell order necessarily would lead to a quantum reduction level of custody is just not possible. Let me, let me ask you this with the, um, so right now under the cell order, if he didn't cooperate, as I understand it, they could take whatever physical steps they need in order to medicate him. That is correct. That is correct, your honor. Okay. So if he, if he were to succeed in establishing a due process violation, that there's some defect in the cell proceedings or order or whatever, um, wouldn't that remove the forcible aspect? So, so the level of custody, the conditions of his custody come down. Well, and I, I think the word you just used is critical. Those are the conditions of his custody. And when we're talking about habeas, we're talking about confinement. So his confinement at the state hospital would not necessarily end. Um, that would, and I apologize, I see I'm out of time. If I could. No, go ahead. No, correct. So, so the, the medical treatment that he is receiving, that is a condition of his confinement. And again, habeas is focused on confinement. So when we talk about disciplinary segregation, uh, the person is confined to a different unit that is more restrictive than their move to a different unit that is less restrictive. So what we have to focus on here, whether the elimination of the cell order would reduce in a reduction in his confinement by virtue of him being released into the community. And, and as I've explained, that's not necessarily the case. And therefore this does not fall within habeas. It would fall under section 1983. Yeah. The district court didn't address this issue, correct? That is correct. Your honor. Um, okay. But is it, it is an issue of law, correct? Juris subject matter. Jurisdiction is an issue of law and, uh, it is something that this court can and generally must address in the first instance. That being said, this court has another circumstances remanded to the district court for the district court to decide in the first instance, whether subject matter jurisdiction, uh, existed in based on that proceed with either the same ruling, which would then go up on appeal again or a different disposition. Unless this court has any further questions, I would ask that you affirm. Okay. Uh, we'll hear from Dishon on rebuttal. Thank you. I had to unmute. That was my delay. I apologize. Um, opposing counsel argues that because Mr. Bean might not be immediately released, um, uh, you don't meet the change in custody requirement. Uh, but one being released to community, uh, to, to, to civil commitment certainly is a release. Um, and two, the moment that the order, the fourth medication order is lifted, assuming it is confinement changes in this way, the confinement required by the medication or the fourth medication order is the compulsion to take the fourth medication. And by that breaking that down, it means you're going to be confined by state agents to a gurney and injected that is confinement. And that confinement will be immediately vacated or, or evaporate.  Well, it, it is a kind of confinement. I'm not sure that you need to decide whether it's a condition or not, but in any event, while it may be a condition of confinement, it certainly is a quantum change in the level of custody. Well, the distinction is critical because if it's a condition of confinement, it's not a proper subject of habeas relief. Okay. But our position, your honor, is that of course, it's not a condition of confinement because they kind of can, it is confinement. The confinement is that there's a custody level, which includes having this order in place. If you, if the order evaporates, the custody level changes in a quantum, uh, manner. In addition to that, the confinement is very real in this case. It's not some sort of abstract confinement. The confinement is if you, Mr. Bean fail to comply, we are going to confine you to a gurney. We are going to bring in however many people it's needed and inject you. That certainly counts as confinement. I believe. Counsel. So is it your argument that any state prisoner who is subject to, um, a sale order can have his or her criminal trial halted by the federal court? If the site, certainly they should have an opportunity. My position is they should have an opportunity to have a federal court review the cell order in the, uh, for whether it meets complies with constitutional requirements. Yes. You don't have one case that has ruled that. No, but interestingly, your honor, I have looked very far and wide for, uh, circuit court cases and district court cases for that matter, uh, which actually confront the issue before this court, whether younger abstention applies and specifically more, more specifically, whether, uh, we meet an extraordinary circumstance exception to younger. I have not found any court to actually engage in a reasoned manner with that question. Just let me, can I, can I ask you a related question that a counselor for the state sort of suggested? Uh, why, why isn't a suit under section 1983 sufficient or a viable alternative? Judge, it may be a viable alternative, but the ruling here is that we may not bring it as a habeas matter. Well, that's not my question. I mean, I understand that. My question is, why don't you bring, why can't you bring this claim that his, that his cell rights were violated in a 1983 case, I guess, against this, you'd only be seeking an injunctive relief, I guess. And that's, you don't, you wouldn't have, um, I don't think you would be, well, usually in 1983 cases, you have to sue individuals, but here you'd be suing, I guess, the state. I mean, I have to give it some thought, but I'm asking you, why, why, why could, why couldn't you bring a 1983 case? Judge, I don't know that we could not bring a 1983 case. And if the court wishes, uh, uh, what we're seeking is review. Obviously we're seeking a review of the cell order, uh, because we think that it, uh, it failed to meet constitutional requirements and that my clients due process rights are being violated on a daily basis. If the court, uh, believes that. Well, I mean, under Nettles, if you read Nettles and you, and you determine that this case doesn't fall within the core of habeas, if the claim doesn't fall within the core of habeas, then under Nettles, you might, your, your only alternative is section 1983. But in that event, your honor, if that is, if that is what, uh, uh, you, you conclude, we would ask that you remand the case and have it converted into a 1983 case. We're seeking review, whatever the procedural So one of the hurdles in 1983 is you have to exhaust prison administrative remedies. Is that a viable, um, I mean, is that a problem here? Judge candidly, I'm not certain, but I do not believe so because we exhausted by going by seeking a mandamus, um, uh, at the Oregon Supreme court and the Oregon Supreme court denied the prison administrative, uh, grievance process. Judge no. And, and finally, I just wanted to ask you if we do ruling your favor, how would the ruling read? What would be the tagline for the, for the order? Um, it's so, it's so infrequent that I get to write this. Um, judge, I think the tagline for the order would be remanded to the district court, uh, to, uh, remanded to the district court for further proceedings. Um, district courts do not like for us. I'm sorry. District courts don't like for us to say remanded for further proceedings without some indication of what those proceedings should be. Absolutely. And judge, I'm sorry. I was slow off the mark. Um, it would, it would have to read something like remanded for further proceedings in light of the ruling that, uh, younger abstention, uh, is improper. I'm sorry. What would those further proceedings be? Well, I think those further proceedings would be a reaching of the merits of the include in your order that the criminal proceeding should cease. That's correct. We would, we would first need to show, as I think judge Piaz has, has, uh, suggested that in fact, the state failed to meet itself, uh, burden. If the state failed to move itself burden, then the proper, uh, consequence would be that the state proceedings would, would have to effectively be stayed because you've got, you've got someone who is incompetent. If they were to prevail on the merits before the district court on the cell due process claim, I, in my discussions with the state, the, the state could just do a, seek a do-over of the cell hearing to determine, you know, to correct whatever errors were there. And I think that's correct, judge. They, they could, they could seek, uh, and as they know, they could see another in their briefing, uh, post-council notes, uh, the state could seek a subsequent cell order based presumably on new developments. But the fact that they did, but the fact that a state abuses someone's constitutional rights today certainly should not give them a pass tomorrow. Understood. I think judge Antune had a question. Judge Antune? I've got it. I thought you already conceded that they had, uh, that the state had met the cell requirements. Oh, no, no. I'm sorry, judge. If I, if I did, that was a total misstatement. Not here today, but in your papers. No, I don't believe that I've conceded that the state met the cell requirements. I thought you were looking just at the exception. I'm sorry. That was the, I thought your whole argument here was the exception to Younger. That's correct. The exception to Younger is that if our, is that our rights, our due process rights, which we believe were violated by the entry of that order. And of course, by the consequences, the daily injections, um, uh, that those can not be fully vindicated absent review under Younger. We're certainly not inconsistent with the position that the state complied with the cell order. You just have, uh, an objection with the fact that the cell order is in place. We have an objection that the, I I'm, I'm sorry, I may not be appreciating the point, but the, the, our position is that the cell order should not be in place because the cell order violates our client's constitutional rights because the prosecution failed to meet the Okay. Okay. Thank you. Thank you. Counsel. Well, let's get wrong. Do you have another question? I was trying to look in the brief to see what the argument was. I did. I don't remember that distinction being made in the brief, uh, about their failure to meet the requirements, the cell requirements. Could you point me in the brief, your brief where you made that argument? Judge, I'm not sure. And I would have to look at the brief. I guess what I would ask the court is I might submit a letter, a supplemental letter pointing you to the point in the brief. The reason why I may not have made it in the brief is because the issue here actually is quite narrow. It's whether younger abstention applies. Exactly. And so that's why judge Antoon was, uh, proceeding on the assumption that you did not challenge the procedural, um, process, the process by which the cell order was entered, just that the existence of the order violates, uh, the due process. I, I, I understand. And I, and I hope that I've been clear that we, we, we in fact do challenge that the reason we're, we're seeking habeas relief is because of that challenge. I don't see it in the brief where you, where you challenged the process by which the cell order was entered, but we'll, we'll, we'll sort it out. I don't need any Thank you. Thank you, counsel. We appreciate your arguments in this interesting case. The matter is submitted at this time. Thank you very much.
judges: Paez, Rawlinson, Antoon